1 | ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

2

3 | PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

4 | KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

5
    450 Golden Gate Avenue, Box 36055
6 |     San Francisco, California 94102-3495
    Telephone: (415) 436-6488
7 |     FAX: (415) 436-7234
    kelsey.helland@usdoj.gov

8
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLDEN GATE BRIDGE, HIGHWAY AND TRANSPORTATION DISTRICT, | Case No. 3:24-cv-04985-RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | Date:    January 9, 2025<br>Time:   1:30 p.m.<br>Place:  Courtroom 3, 17th Floor |
| UNITED STATES DEPARTMENT OF LABOR, et al. | |
| Defendants. | The Honorable Richard Seeborg, Chief Judge |

MOTION TO DISMISS
3:24-CV-04985-RS

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................................1
RELIEF REQUESTED ............................................................................................................................1
MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................................1
I.   INTRODUCTION ............................................................................................................................1
II.  ISSUES TO BE DECIDED ..............................................................................................................2
III. BACKGROUND ...............................................................................................................................2
     A.   Statutory And Regulatory Framework. .....................................................................................2
          1.   The OSH Act. .....................................................................................................................2
          2.   The Scaffolding Standard and OSHA's Interpretation Letters. .........................................4
     B.   Procedural History. ....................................................................................................................6
IV.  LEGAL STANDARD .......................................................................................................................6
     A.   Rule 12(b)(1) ..............................................................................................................................6
V.   ARGUMENT ....................................................................................................................................7
     A.   Plaintiff Lacks Article III Standing. ..........................................................................................7
          1.   Plaintiff Does Not Have Traditional Standing. ..................................................................7
          2.   Plaintiff Does Not Have Organizational Standing. ............................................................9
          3.   Plaintiff Does Not Have Third-Party Standing. ...............................................................10
          4.   Plaintiff Does Not Have Procedural Standing. ................................................................11
     B.   The Letter of Interpretation Is Not a Final Agency Action. ....................................................11
VI.  CONCLUSION ...............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Integrative Medical Science Institute, PLLC v. Garland*,
    24 F.4th 1249 (9th Cir. 2022) .................................................................................. 12, 13, 14

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................................ 12

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ............................................................................................................ 12

*City & Cnty. of S.F. v. Whitaker*,
    357 F. Supp. 3d 931 (N.D. Cal. 2018) ................................................................................ 11

*City of San Diego v. Whitman*,
    242 F.3d 1097 (9th Cir. 2001) ............................................................................................ 12

*Daniel v. National Park Serv.*,
    891 F.3d 762 (9th Cir. 2018) ................................................................................................ 8

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ........................................................................................... 9, 10

*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
    887 F.3d 906 (9th Cir. 2018) .............................................................................................. 11

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) .............................................................................................................. 6

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ............................................................................................................ 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................................... 7, 8

*Martin v. Occupational Safety and Health Review Comm'n*,
    499 U.S. 144 (1991) .............................................................................................................. 3

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir 1988) ............................................................................................... 7

*One Fair Wage, Inc. v. Darden Restaurants Inc.*,
    687 F. Supp. 3d 881 (N.D. Cal. 2023) ............................................................................ 9, 10

*Owen Equipment & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) .............................................................................................................. 6

*Renne v. Geary*,
    501 U.S. 312 (1991) .............................................................................................................. 7

*S.F. Herring Ass'n v. Dep't of the Interior*,
    946 F.3d 564 (9th Cir. 2019) .............................................................................................. 13

*Safer Chems., Healthy Families v. EPA*,
    943 F.3d 397 (9th Cir. 2019) .................................................................................................. 8, 9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................... 7, 8

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................................... 7

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.3d 1221 (9th Cir. 1989) .................................................................................................... 6

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ............................................................................................................ 12, 13

*Ukiah Valley Med. Ctr. v. FTC*,
    911 F.2d 261 (9th Cir. 1990) .................................................................................................... 12

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ................................................................................................. 12, 14

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ..................................................................................................... 8

**Statutes**

5 U.S.C. § 500 ..................................................................................................................................... 6

5 U.S.C. § 704 ................................................................................................................................... 11

29 U.S.C. § 651 ................................................................................................................................... 2

29 U.S.C. § 652 ............................................................................................................................... 3, 8

29 U.S.C. § 654 ................................................................................................................................... 3

29 U.S.C. § 655 ............................................................................................................................... 2, 3

29 U.S.C. § 658 ................................................................................................................................. 14

29 U.S.C. § 659 ............................................................................................................................. 3, 14

29 U.S.C. § 660 ................................................................................................................................... 3

29 U.S.C. § 667 ............................................................................................................................ 3, 4, 8

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................................................... 1, 6

**Regulations**

8 Cal. Code Reg. § 1637 ................................................................................................................. 6, 8

29 C.F.R. § 1926.450 ......................................................................................................................... 4

29 C.F.R. § 1926.451 ................................................................................................................... 4

61 Fed. Reg. 46026 (Aug. 30, 1996) ............................................................................................ 4

85 Fed. Reg. 58393 (Sept. 18, 2020) ............................................................................................ 2

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on January 9, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Richard Seeborg, United States Chief District Judge, Defendants United States Department of Labor; Julie A. Su in her official capacity as Acting Secretary of Labor; Occupational Safety and Health Administration; and Douglas L. Parker in his official capacity as Assistant Secretary of Labor for Occupational Safety will, and hereby do, move for an order dismissing the Complaint of Plaintiff Golden Gate Bridge, Highway and Transportation District for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  This motion is based on this Notice; the Memorandum of Points and Authorities submitted herewith; the pleadings, records, and files in this case; other matters of which the Court takes judicial notice; and such other written or oral argument and additional evidence as may be presented at or before the time the Court takes this motion under submission.

Pursuant to Civil Local Rule 7-3, any opposition or statement of non-opposition of Plaintiff must be served and filed not more than fourteen days after the filing of this Motion.

**RELIEF REQUESTED**

Defendants seek an order dismissing the Complaint for lack of subject matter jurisdiction.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The public transportation district that operates the Golden Gate Bridge has asked this Court to review an interpretative letter published on the website of the Occupational Safety and Health Administration (OSHA) about how to calculate the weight that scaffolding must support.  But curiously absent from Plaintiff's Complaint is any indication that it has been harmed in any way by the interpretive letter at issue.  Federal courts are courts of limited jurisdiction, and plaintiffs must establish that they have standing before their claims can be heard.  Standing famously includes an injury requirement.  But Plaintiff's Complaint is simply silent about this crucial threshold issue.  The Complaint must therefore be dismissed for lack of standing.

But lack of standing is not the only jurisdictional problem here.  The interpretive letter that

Plaintiff seeks to challenge was not a "final agency action" subject to judicial review. It was a letter directed to a third party that answered a question in the abstract about how OSHA interprets a safety standard concerning scaffolding loads. It was informal, of a kind that OSHA issues dozens of times a year, with no legal significance in and of itself. Indeed, there is a separate OSHA enforcement regime by which the agency issues citations with legal consequences to noncompliant employers—but that is not what happened here. Because the interpretive letter was merely an "informational document" without independent legal consequence, the Court cannot review it under the APA.

For both of these reasons, the Complaint must be dismissed for lack of subject matter jurisdiction.

## II. ISSUES TO BE DECIDED

1. Whether the Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiff lacks Article III standing; and

2. Whether the Complaint must be dismissed for lack of subject matter jurisdiction because the challenged agency action is not a final agency action subject to judicial review.

## III. BACKGROUND

### A. Statutory And Regulatory Framework.

#### 1. The OSH Act.

After extensive investigation, Congress concluded in 1970 that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651(a). Accordingly, Congress enacted the Occupational Safety and Health Act (OSH Act) "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b).

To effectuate the Act's purpose, Congress authorized the Secretary of Labor to promulgate "occupational safety and health standards" following specified rulemaking procedures. *See* 29 U.S.C. § 655.[1] The OSH Act defines an occupational safety and health standard as a rule that "requires

---

[1] The Secretary of Labor has delegated OSH Act authority to an Assistant Secretary who heads OSHA. *See, e.g.*, 85 Fed. Reg. 58393 (Sept. 18, 2020).

conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).  Any party adversely affected by the promulgation of an occupational safety and health standard may, "at any time prior to the sixtieth day after such standard is promulgated[,]" challenge "the validity of such standard" in "the United States court of appeals for the circuit wherein such person resides or has his principal place of business."  29 U.S.C. § 655(f).

Employers must comply with the Secretary's standards, and—where it has jurisdiction—OSHA can issue "citations" to employers for noncompliance.  *See* 29 U.S.C. §§ 654(a)(2), 658, 659.  OSHA citations are subject to review before the Occupational Safety and Health Review Commission—an independent adjudicative forum established by the OSH Act.  *See* 29 U.S.C. §§ 659(c), 661; *see also Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 147-48 (1991).  Orders of the Review Commission are subject to judicial review in the federal courts of appeals.  *See* 29 U.S.C. § 660.

However, the OSH Act also permits states to promulgate and enforce their own workplace standards subject to certain criteria.  *See* 29 U.S.C. § 667(b).  To do so, states must submit "State Plans" demonstrating that their own standards "are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated" by Federal OSHA.  *Id.* § 667(c)(2).  Once the State Plan has been approved, and subject to exceptions not applicable here, Federal OSHA no longer has jurisdiction over that state's standards.  *See id.* § 667(e).  State Plans are required to cover state and local government employers.  *Id.* § 667(c)(6).  California has had an approved state plan since 1973, such that a California state agency—Cal/OSHA—exercises jurisdiction over workplace standards within the state as to private and state employers.  *See* OSHA, California State Plan, https://www.osha.gov/stateplans/ca (last accessed Oct. 25, 2024); *see also* Cal/OSHA, https://www.dir.ca.gov/dosh/ (last accessed Oct. 25, 2024).[2]

Separate from the formal citation process, OSHA routinely responds to questions from the public about how standards apply in particular situations by publishing "Standard Interpretations" on its website.  *See* Standard Interpretations, https://www.osha.gov/laws-

---

[2] Defendants request that the Court take judicial notice of the websites referenced in this Motion under Federal Rule of Evidence 201.

MOTION TO DISMISS
3:24-CV-04985-RS                                       3

regs/standardinterpretations/publicationdate (last accessed Oct. 25, 2024). As OSHA's website makes clear:

> OSHA requirements are set by statute, standards, and regulations. Our interpretation letters explain these requirements and how they apply to particular circumstances, but they cannot create additional employer obligations. Each letter constitutes OSHA's interpretation of the requirements discussed. Note that our enforcement guidance may be affected by changes to OSHA rules. Also, from time to time we update our guidance in response to new information.

*Id.* OSHA's website contains hundreds of such letters dating back to 1972. *See id.* In recent years, OSHA has published between approximately one to three dozen letters each year. *See id.*

### 2.    The Scaffolding Standard and OSHA's Interpretation Letters.

In 1996, pursuant to the OSH Act, OSHA issued the Scaffolding Standard at issue here: "each scaffold and scaffold component shall be capable of supporting, without failure, its own weight and at least 4 times the maximum intended load applied or transmitted to it." 29 C.F.R. § 1926.451(a)(1); *see also* Compl. ¶¶ 2, 27-29. The "maximum intended load" is defined by the 1996 standard as "the total load of all persons, equipment, tools, materials, transmitted loads, and other loads reasonably anticipated to be applied to a scaffold or scaffold component at any one time." 29 C.F.R. § 1926.450(b); *see also* Compl. ¶ 28. OSHA promulgated the Scaffolding Standard following a formal notice-and-comment rulemaking process. *See* Compl. ¶¶ 16-29; *see also* 61 Fed. Reg. 46026 (Aug. 30, 1996).

In 2011, OSHA's Directorate of Construction received a letter from a member of the public named Steve Karasik, who identified himself as the Chief Engineer of the contracting firm PERI Formwork Systems, Inc. in Elkridge, Maryland. *See* Compl. ¶ 30; *see also* Standard Interpretation Letter (Dec. 6, 2013; rev. Apr. 24, 2020), *available at* https://www.osha.gov/laws-regs/standardinterpretations/2013-12-06. Mr. Karasik had posed the question: "For scaffolds used in construction work, how is the weight of the scaffold taken into consideration in determining whether the 4 to 1 factor required by 29 CFR 1926.451(a)(1) is satisfied? How do the scaffolding requirements for general industry work differ from construction?" Compl. ¶ 32; *see also* Standard Interpretation Letter.

In 2013, James G. Maddux, Director of OSHA's Directorate of Construction, responded to Mr. Karasik's questions by issuing the Standard Interpretation Letter at issue here. *See* Compl. ¶ 30; Standard Interpretation Letter. The Standard Interpretation Letter explained that "Under section

1926.451(a)(1), each component of a scaffold system must be able to support at least 4 times the maximum intended load on that component, in addition to the weight of the component." Compl. ¶ 33; Standard Interpretation Letter.

> For example, on a multi-level scaffold, each bottom leg must be able to support its own weight and four times the load reasonably anticipated to be imposed on that leg. Part of the load imposed on a bottom leg will arise from the weight of the part of the scaffold that the bottom leg supports. Part will arise from the weight of persons, equipment, tools, and materials on the scaffold, and part will arise from other sources, such as wind.

Compl. ¶ 34; Standard Interpretation Letter.

In 2020, OSHA published a revised version of the Standard Interpretation Letter. *See* Compl. ¶ 37; Standard Interpretation Letter. OSHA explained when it released the revised letter that "The letter issued on 12/6/2013 had raised some confusion in the scaffold industry regarding what loadings were included in the maximum intended load and the application of 4 to 1 factor to the maximum intended load as required by 29 CFR 1926.451(a)(1)." Standard Interpretation Letter. "This letter has been modified to clarify these requirements for scaffolds as intended in the standard. This revision of the letter does not add any burdens or additional requirements that the standard did not intend, and reflects current OSHA regulations and policies." *Id.* The online version of the revised letter struck through prior text that OSHA removed, and identified new text in bold. *See* Standard Interpretation Letter.

The 2020 version of the Standard Interpretation Letter provided the following amended response to Mr. Karasik's question: "Under section 1926.451(a)(1), each component of a scaffold system must be able to support its own weight (the weight of the component itself, in addition to the portion of the scaffold's weight that is transmitted to that component), and at least 4 times the maximum intended load transmitted to that component." Compl. ¶ 41; *see also* Standard Interpretation Letter.

> For example, on a multi-level scaffold, each bottom leg must be able to support the scaffold weight transmitted to that component, including the component weight itself, and four times the portion of the maximum intended load reasonably anticipated to be imposed on that leg, which include the maximum intended load transmitted to that component and the maximum intended load directly applied to that component. (Note that the maximum intended load, as defined under section 1926.450, does not include the weight of the scaffold.) Part of the maximum intended load will arise from the weight of persons, equipment, tools, and materials on the scaffold, and part will arise from other sources, such as wind.

Standard Interpretation Letter.

MOTION TO DISMISS
3:24-CV-04985-RS                                5

However, Cal/OSHA has promulgated its own regulation regarding scaffolding weight. The state regulation provides, "Each scaffold shall be designed and constructed using a dead load safety factor that will ensure the scaffold supports, without failure, its own weight and 4 times the maximum intended working (live) load applied or transmitted to it." 8 Cal. Code Reg. § 1637(b)(2). The regulation goes on to specify various "maximum intended working loads" for different types of scaffolds. *Id.* § 1637(b)(2)(A)-(E).

**B.     Procedural History.**

Plaintiff is the Golden Gate Bridge, Highway and Transportation District, "a public agency existing under the laws of California" that "owns, operates, and maintains the Golden Gate Bridge." Compl. ¶ 7. Plaintiff alleges that, in 2020, it sent a letter to OSHA's Directorate of Construction, asking them to withdraw the 2020 version of the Standard Interpretation Letter. *Id.* ¶ 47. Plaintiff alleges that "OSHA declined to withdraw the letter." *Id.*

Plaintiff filed this lawsuit on August 9, 2024. *See* Compl. Plaintiff invokes this Court's jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 500 *et seq*. *See id.* ¶ 12. Plaintiff brings two claims: (1) for a declaration that the 2020 version of the Standard Interpretation Letter is unlawful and should be set aside because OSHA did not issue it following notice-and-comment rulemaking, *see* Compl. ¶¶ 48-63; and (2) for a declaration that the 2020 version of the Standard Interpretation Letter is arbitrary and capricious and therefore invalid, because OSHA allegedly failed to consider or explain certain issues related to its interpretation, *see id.* ¶¶ 64-73.

**IV.    LEGAL STANDARD**

**A.     Rule 12(b)(1)**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) if the district court lacks subject matter jurisdiction over the claim. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Limits on federal jurisdiction must be neither disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). As courts of limited jurisdiction, federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.3d 1221, 1225 (9th

Cir. 1989). Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir 1988), *cert. denied*, 488 U.S. 1006 (1989).

## V. ARGUMENT

The Court lacks subject matter jurisdiction over this matter for two reasons: (1) Plaintiff lacks Article III standing; and (2) the letter of interpretation was not "final agency action" subject to judicial review. Both are independent reasons why the Complaint must be dismissed.

### A. Plaintiff Lacks Article III Standing.

A plaintiff who seeks to invoke federal jurisdiction bears the burden of establishing "the irreducible constitutional minimum" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing to sue "is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (citation omitted). Courts "presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation and citations omitted).

As explained below, Plaintiff does not itself have standing under the Supreme Court's traditional three-part test. Nor can Plaintiff rely on the doctrines of organizational standing, third-party standing, or procedural standing here. As a result, the Court lacks subject-matter jurisdiction for Plaintiff's claims.

#### 1. Plaintiff Does Not Have Traditional Standing.

To satisfy the traditional elements of standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injury in fact is the "[f]irst and foremost" of standing's three elements. *Steel Co.*, 523 U.S. at 103. "[T]he plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest" that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Lujan*, 504 U.S. at 560. The plaintiff's injury must also be "fairly traceable to the challenged conduct of the defendant," as well as "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The redressability element requires a showing that "it is likely,

MOTION TO DISMISS
3:24-CV-04985-RS                                              7

although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010).

Article III's standing requirements apply with full force to plaintiffs challenging agency action under the Administrative Procedure Act. *See, e.g.*, *Lujan*, 504 U.S. at 559 (plaintiffs lacked standing in APA case); *Safer Chems., Healthy Families v. EPA*, 943 F.3d 397, 410-11 (9th Cir. 2019). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element of the standing inquiry. *Spokeo*, 578 U.S. at 338.

Plaintiff's allegations here fall far short of this requirement. The Complaint is entirely devoid of allegations that Plaintiff was injured in any way by OSHA's publication of the revised Standard Interpretation Letter. *See generally* Compl. It bears repeating: There is not a single allegation in the Complaint indicating that the Golden Gate Bridge, Highway and Transportation District was harmed in any way by the 2020 version of the Standard Interpretation Letter. *See id.*

Moreover, any unidentified injury Plaintiff may claim would not be "fairly traceable" to Defendants, because Federal OSHA lacks jurisdiction over Plaintiff and cannot enforce federal safety and health standards against it. *See* 29 U.S.C. § 652(5) (defining "employer" to specifically exclude "any State or political subdivision of a State"). The Golden Gate Bridge is in California, and Plaintiff is an arm of the California state government. *See* Compl. ¶ 7. As explained above, California has assumed responsibility for occupational safety and health within its own boundaries by enacting a State Plan. Such State Plans must be at least as effective as Federal OSHA standards, but they may be *more* worker-protective if a state desires. *See* 29 U.S.C. § 667(b), (c). Accordingly, it would be Cal/OSHA – not Federal OSHA – that would regulate Plaintiff's occupational safety practices. And Cal/OSHA has indeed promulgated a standard governing scaffolding weight in California. *See* 8 Cal. Code Reg. § 1637. Plaintiff therefore brings this lawsuit to challenge a regulation that does not even directly apply to it. Whatever Plaintiff's underlying concerns may be, they are not fairly traceable to Defendants, who do not exercise jurisdiction over Plaintiff. *See Daniel v. National Park Serv.*, 891 F.3d 762, 766-68 (9th Cir. 2018).

Because Plaintiff has not alleged any injury to itself whatsoever, nor could it fairly trace any purported injury to Defendants, Plaintiff lacks standing under Article III, and the Court must dismiss the

1  Complaint. *See Safer Chems.*, 943 F.3d at 415 (alleged injury from EPA's regulatory interpretation
2  insufficient without actual threat of harmful enforcement).

3               **2.**        **Plaintiff Does Not Have Organizational Standing.**

4         Rather than actually allege any injury to itself, Plaintiff claims that that "Defendants' failure to
5  consider essential safety margins in their revised interpretation exposes *construction workers* to
6  significant risks and undermines the protective intent of the regulations." *Id.* ¶ 73 (emphasis added).
7  But Plaintiff is not a "construction worker"; it is "a public agency" that "owns, operates, and maintains
8  the Golden Gate Bridge." *Id.* ¶ 7. True, Plaintiff claims that it has "a long history of protecting
9  construction workers." *Id.* But this is not enough to supply Article III standing here.

10         Under the doctrine of "organizational standing," an organization may demonstrate Article III
11  standing in two separate ways: either "on behalf of their own members" or "in their own right." *E. Bay*
12  *Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021). The former is not at issue here, as
13  Plaintiff does not allege it has any "members." *See* Compl. ¶ 7.

14         For the latter, "an organization has direct standing to sue where it establishes that the defendant's
15  behavior has frustrated its mission and caused it to divert resources in response to that frustration of
16  purpose." *E. Bay Sanctuary*, 993 F.3d at 663. But Plaintiff's "mission" is to own, operate, and maintain
17  the Golden Gate Bridge. *See* Compl. ¶ 7; *see also* About the District,
18  https://www.goldengate.org/district/about-the-district (last accessed Oct. 25, 2024) ("The mission of the
19  Golden Gate Bridge, Highway and Transportation District (District) is to provide safe and reliable
20  operation, maintenance and enhancement of the Golden Gate Bridge and to provide transportation
21  services, as resources allow, for customers within the U.S. Highway 101 Golden Gate Corridor.").
22  Plaintiff is not an advocacy organization seeking to protect construction workers; it is a transportation
23  district. And neither its allegation that it has a history of protecting workers, *see* Compl. ¶ 7, nor its goal
24  of providing "safe" operations, mean that its "mission" for Article III purposes broadly includes
25  protecting construction workers such that it has standing to challenge an interpretation letter about
26  scaffolding weights. *See One Fair Wage, Inc. v. Darden Restaurants Inc.*, 687 F. Supp. 3d 881, 889
27  (N.D. Cal. 2023) ("OFW does not contend its mission is to provide direct services to employees . . .
28  Rather, its mission is to lobby and advocate.").

Nor can Plaintiff articulate any way in which it has had to "divert resources in response to [any] frustration of [its] purpose." *E. Bay Sanctuary*, 993 F.3d at 663; *see also One Fair Wage*, 687 F. Supp. 3d at 889 (alleged diversion of resources was "indirect and derivative of the putative effect of the challenged policy"). Plaintiff does not allege that complying with the 2020 version of the Standard Interpretation Letter would be more costly than complying with any prior interpretations. *See generally* Compl. Indeed, it is hard to see how it could be, given Plaintiff alleges the standard has been relaxed. *See id.* ¶¶ 1, 6. And of course, Plaintiff is free to use what it considers to be a safer load requirement in its own scaffolding; nothing in the Standard Interpretation Letter or otherwise precludes Plaintiff from exceeding the letter's requirements to "protect" the construction workers maintaining the Golden Gate Bridge.

### 3. Plaintiff Does Not Have Third-Party Standing.

Nor is this a case where Plaintiff can invoke the doctrine of "third-party standing." The Supreme Court has recognized "that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). "But [the Court has] limited this exception by requiring that a party seeking third-party standing make two additional showings." *Id.* at 130. "First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right." *Id.* "Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.*

Even assuming that some undefined group of "construction workers" had standing to bring Plaintiff's claims (which Defendants do not concede), Plaintiff cannot make the "two additional showings" required by *Kowalski*. Indeed, other than vaguely alleging it has a history of protecting them, Plaintiff does not describe its relationship to any construction workers whatsoever. *See* Compl. ¶ 7. In *Kowalski*, plaintiff attorneys did not have a sufficiently "close relationship" with hypothetical future clients affected by a state procedure for appointing indigent counsel. 543 U.S. at 127. Plaintiff's relationship here is no closer. Nor can Plaintiff show that "construction workers" would be "hindered" in bringing a challenge themselves—indeed, there is no conceivable basis why they would be. *See id.* at 132-33 (insufficient showing that indigent defendants were hindered by lack of appellate counsel).

### 4. Plaintiff Does Not Have Procedural Standing.

Finally, Plaintiff cannot rely on the theory that it is "subject to [a] less rigorous standing inquiry" because it "alleges a procedural violation." *City & Cnty. of S.F. v. Whitaker*, 357 F. Supp. 3d 931, 941 (N.D. Cal. 2018). "'In order to establish an injury in fact in the context of a claimed procedural error in an agency's decisionmaking process, a plaintiff must show that (1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests.'" *Id.* (quoting *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 918 (9th Cir. 2018)) (cleaned up).

Here, there is no allegation that any "procedural rules" at issue protect *Plaintiff's* "concrete interests," much less that the Standard Interpretation Letter will "threaten" Plaintiff's concrete interests in any way. *See generally* Compl. Again, Plaintiff does not allege that its interests have been impacted in *any* way by the Standard Interpretation Letter. To the extent Plaintiff believes that scaffolding on the Golden Gate Bridge should be subject to a more conservative approach than that reflected in the Standard Interpretation Letter, there is nothing stopping Plaintiff from using that approach. Nor is there any allegation that OSHA has threatened to cite Plaintiff if Plaintiff uses extra scaffolding, *see generally* Compl., and indeed, as explained above, Federal OSHA does not have jurisdiction over Plaintiff.

Because Plaintiff has not alleged that its concrete interests are affected in any way by the Standard Interpretation Letter—much less that there is a reasonable probability that its interests are *threatened*—Plaintiff cannot rely on the theory of "procedural standing" here. *See Whitaker*, 357 F. Supp. 3d at 946-48 (rejecting City's alleged injuries of (i) interference with its own administration; (ii) threatened enforcement; and (iii) economic harm in procedural standing analysis).

\*   \*   \*

In short, Plaintiff's allegations are insufficient under any possible theory of standing. The Court must therefore dismiss the Complaint for lack of jurisdiction.

### B. The Letter of Interpretation Is Not a Final Agency Action.

APA review is also unavailable here because neither the Department of Labor nor OSHA has taken any "final agency action." The APA only allows judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Two conditions must be met for there to

1  be a final agency action: (1) "the action must mark the consummation of the agency's decisionmaking
2  process -- it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one
3  by which rights or obligations have been determined, or from which legal consequences will flow." *U.S.*
4  *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S.
5  154, 177-78 (1997)). "The general rule is that administrative orders are not final and reviewable 'unless
6  and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of
7  the administrative process.'" *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990)
8  (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).

9        The Ninth Circuit recently addressed the "final agency action" standard in *Advanced Integrative*
10  *Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ("*AIMSI*"). There, the Drug
11  Enforcement Administration had responded to a question from the public about the administration of
12  certain drugs by "identifying the available exemptions in the [Controlled Substances Act] and indicating
13  that the [Right to Try Act] did not create any additional exemptions." *Id.* at 1252. In considering
14  whether the DEA's letter qualified as "final agency action," the Ninth Circuit explained that "courts
15  differentiate between an informational document that merely provides the agency's interpretation of a
16  statute, and a decision that determines how a statute or regulation applies to facts for enforcement
17  purposes." *Id.* at 1258 (citation omitted). "An agency's informational document, in which 'an agency
18  merely expresses its view of what the law requires of a party,' is not a final agency action." *Id.* As prior
19  examples of mere informational documents, the court identified "a letter written by the EPA, stating it
20  planned to apply the Ocean Pollution Reduction Act to the City's future application for renewal of its
21  wastewater discharge permit," and "an agency's informational manual on compliance with the National
22  Environmental Policy Act." *Id.* (citing *City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001), &
23  *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021)).

24        "By contrast, a decision document that marks the conclusion of an agency's decisionmaking
25  process and has legal consequences for the regulated party is a final agency action." *AIMSI*, 24 F.4th at
26  1259. The court cited examples of "a determination issued by the Army Corps of Engineers giving its
27  definitive view on whether a particular piece of property contained wetlands," and "a series of
28  enforcement orders" by the National Park Service "stating it had jurisdiction over the Golden Gate

National Recreation Area (GGNRA), and announcing its intention 'to enforce the prohibition on commercial fishing' in those waters," after which, "'critically, the Park Service then put its declared position into action when its uniformed officers and California wardens (allegedly acting at the federal government's direction) took to the waters to order herring fishermen to stop fishing in the GGNRA.'" *Id.* at 1259-60 (citing *Hawkes*, 578 U.S. 590, & *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564 (9th Cir. 2019)).

"In short, in considering whether an agency's informational document is a final agency action, [courts] take a 'pragmatic approach.'" *AIMSI*, 24 F.4th at 1260. "If the informational document is more analogous to the 'the type of workaday advice letter that agencies prepare countless times per year in dealing with the regulated community,' and is little more than a restatement of statute and regulations in a response to a 'request for assistance,' it is not the consummation of a decisionmaking process or an order from which 'legal consequences will flow.'" *Id.* (citations omitted). "By contrast, if the informational document 'is issued after extensive factfinding,' or after a public hearing, or after 'a series of formal written notices,' and thus indicates the agency's determination that a regulated party disobeys the order at its peril of incurring criminal penalties or sanctions, it satisfies the *Bennett* conditions and is a final agency action." *Id.* (citations omitted).

Here, the Standard Interpretation Letter is merely an "informational document" that does not rise to the level of a reviewable "final agency action." First, it is the type of workaday letter that OSHA prepares dozens of times per year in response to requests for assistance from the public. Indeed, OSHA initially issued the letter in 2013 in response to a question from a specific individual, *see* Compl. ¶ 30, and revised it in 2020 in response to "confusion in the scaffold industry," Standard Interpretation Letter (explaining reason for 2020 update). By its own terms, the letter largely restates the Scaffolding Standard itself. *See* Standard Interpretation Letter. OSHA has published dozens of such letters on its website in recent years, and hundreds of them going back to 1972. *See* Standard Interpretations, https://www.osha.gov/laws-regs/standardinterpretations/publicationdate.

Second, the Standard Interpretation Letter does not itself lead to legal consequences for the person who requested the information, for Plaintiff, or for anyone else. Indeed, the OSHA website on which the letter is published explains that "OSHA requirements are set by statute, standards and

MOTION TO DISMISS
3:24-CV-04985-RS                                                  13

regulations," and that OSHA's "interpretation letters explain these requirements and how they apply to particular circumstances, but they cannot create additional employer obligations." Standard Interpretation Letter. The letter does not purport to be the culmination of any formal factfinding process; it was not issued after a public hearing; and it does not itself threaten any penalties for noncompliance. *See id.*; *see also* Compl. ¶ 62 ("In promulgating the 2020 Revised Interpretation Letter, OSHA did not give the public prior notice or an opportunity through comment to participate in the rule's formulation."). To the contrary, if any employer is cited for violating the Scaffolding Standard, the administrative process laid out in the OSH Act will determine whether that employer complied with the Scaffolding Standard itself, not whether the employer complied with the Standard Interpretation Letter. *See* 29 U.S.C. § 658(a).[3]

All indicia point to the fact that the Standard Interpretation Letter is merely an informational document, not final agency action. *See AIMSI*, 24 F.4th at 1259 (no final agency action when "in a later enforcement action, the regulated party would face liability only for noncompliance with the underlying statutory commands, not for disagreement with the agency's determination.") (citation and internal quotation marks omitted); *see also Whitewater Draw*, 5 F.4th at 1008 (agency's informational manual on statutory compliance was not a final agency action). The Court therefore lacks jurisdiction here. *See AIMSI*, 24 F.4th at 1252.

## VI.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint for lack of subject matter jurisdiction.

DATED: October 25, 2024                             Respectfully submitted,

                                                               ISMAIL J. RAMSEY
                                                               United States Attorney

---

[3] As explained in the Background above, the employer could appeal any citation to the Review Commission, and thereafter to the Court of Appeals. *See* 29 U.S.C. §§ 659(c), 660. But again, Plaintiff does not allege it is being threatened with citation here, *see generally* Compl., and in any event jurisdiction over Plaintiff lies with Cal/OSHA, not Federal OSHA.

|   |   |
|---|---|
| 1 |               */s/ Kelsey Helland* |
| 2 | KELSEY J. HELLAND<br>Assistant United States Attorney |
| 3 | Attorneys for Defendant |