UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOLDEN GATE BRIDGE, HIGHWAY
AND TRANSPORTATION DISTRICT,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
LABOR, et al.,

Defendants.

Case No.  24-cv-04985-RS

**ORDER GRANTING MOTION TO
DISMISS**

## I. INTRODUCTION

Plaintiff Golden Gate Bridge, Highway and Transportation District seeks a declaratory judgment that Defendant Occupational Safety and Health Administration ("OSHA") violated the Administrative Procedures Act ("APA") when it issued an interpretive letter about its scaffolding regulations.  OSHA and Co-Defendants, the United States Department of Labor ("DOL"). the Acting Labor Secretary, and the Assistant Labor Secretary for OSHA (collectively, "Defendants"), move to dismiss the complaint on the grounds that Plaintiff lacks Article III standing and that the challenged letter was not a final agency action reviewable under the APA.  For the reasons explained below, the motion to dismiss is granted.

## II. BACKGROUND

In 1996, OSHA issued certain scaffolding regulations following a formal notice-and-comment rulemaking process.  Under these regulations, "each scaffold and scaffold component shall be capable of supporting, without failure, its own weight and at least 4 times the maximum

intended load applied or transmitted to it." 29 C.F.R. § 1926.451(a)(1); *see also* First Amended Complaint ("FAC") ¶¶ 2, 28–30. The regulations further define "maximum intended load" as "the total load of all persons, equipment, tools, materials, transmitted loads, and other loads reasonably anticipated to be applied to a scaffold or scaffold component at any one time." 29 C.F.R. § 1926.450(b); *see also* FAC ¶ 29.

In 2013, OSHA issued a Standard Interpretation Letter ("2013 Letter") in response to an engineer's public request for clarification about how the weight of a scaffold should be considered in determining whether the regulation's required 4-to-1 factor is satisfied. According to the 2013 Letter, "[u]nder section 1926.451(a)(1), each component of a scaffold system must be able to support at least 4 times the maximum intended load on that component, in addition to the weight of the component." FAC ¶ 34. As an example, the 2013 Letter stated:

> For example, on a multi-level scaffold, each bottom leg must be able to support its own weight and four times the load reasonably anticipated to be imposed on that leg. Part of the load imposed on a bottom leg will arise from the weight of the part of the scaffold that the bottom leg supports. Part will arise from the weight of persons, equipment, tools, and materials on the scaffold, and part will arise from other sources, such as wind.

FAC ¶ 35.

In 2020, OSHA issued a revised version of the 2013 Letter ("2020 Letter"). It rephrased its earlier guidance by explaining that, "[u]nder section 1926.451(a)(1), each component of a scaffold system must be able to support its own weight (the weight of the component itself, in addition to the portion of the scaffold's weight that is transmitted to that component), and at least 4 times the maximum intended load transmitted to that component." FAC ¶ 42. As a new example, the 2020 Letter stated:

> For example, on a multi-level scaffold, each bottom leg must be able to support the scaffold weight transmitted to that component, including the component weight itself, and four times the portion of the maximum intended load reasonably anticipated to be imposed on that leg, which include the maximum intended load transmitted to that component and the maximum intended load directly applied to that component. (Note that the maximum intended load, as defined under section 1926.450, does not include the weight of the scaffold.) Part of the maximum intended load will arise from the weight of persons,

equipment, tools, and materials on the scaffold, and part will arise from other sources, such as wind.

*See* 2020 Letter.[1]

According to Plaintiff, the 2020 Letter resulted from an outreach campaign by one of Plaintiff's contractors, Shimmick/Danny's Joint Venture ("Shimmick"). FAC ¶ 50–53. After the letter was released, Shimmick "delayed finalizing the scaffolding systems design" for a project Plaintiff had contracted Shimmick to build. *Id.* ¶ 54. Plaintiff avers that Shimmick relied on the 2020 Letter to argue that a scaffolding system Plaintiff had required Shimmick to design was not actually mandated by the relevant OSHA regulations, ultimately forcing Plaintiff to bear additional costs. *Id.* ¶ 55. Plaintiff further avers that the 2020 Letter caused delays regarding the installation of scaffolding used in another project and forced it to spend $9 million on a specialized engineering firm. *Id.* ¶ 56.

Plaintiff subsequently filed the instant litigation on August 9, 2024. *See* Dkt. No. 1. Defendants moved to dismiss the complaint on the grounds that 1) Plaintiff lacks Article III standing, and 2) the 2020 Letter was not a reviewable final agency action. *See* Dkt. No. 16. Plaintiff thereafter filed the FAC, including new allegations that it was injured by its disagreements with contractors and related delays. *See generally*, FAC ¶¶ 49–58, 75, 86. The first claim for relief seeks a declaratory judgment that OSHA violated the APA by issuing the 2020 Letter without following notice-and-comment procedures. *Id.* ¶¶ 59–75. The second claim for relief seeks a declaratory judgment that the 2020 Letter is arbitrary and capricious in violation of the APA. *Id.* ¶¶ 76–86.

---

[1] Judicial notice is taken of the websites referenced in Defendants' Motion to Dismiss. *See* https://www.osha.gov/laws-regs/standardinterpretations/publicationdate (last accessed January 30, 2025). Oddly, Plaintiff's complaint did not include the 2020 Letter that forms the crux of the case—it is available at www.osha.gov/laws-regs/standardinterpretations/2013-12-06.

United States District Court
Northern District of California

United States District Court
Northern District of California

## III. LEGAL STANDARD

A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. The plausibility determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. Such a dismissal may rest on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Generally, courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "There are two exceptions to this rule." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). First, "[j]udicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (citing Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned.'" *Id.* (citing Fed. R. Evid. 201(b)(1)–(2)). "Accordingly, a court may take judicial notice of matters of public record . . . [b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (internal citation and quotations omitted). Second, under the incorporation-by-reference doctrine, "a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (internal quotation marks and citation omitted).

## IV. DISCUSSION

Defendants contend that Plaintiff lacks Article III standing. To withstand their motion to dismiss, Plaintiff bears the burden of demonstrating the "irreducible constitutional minimum" of having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff must have standing for each claim it makes. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).

### A. Standing as 5 U.S.C. § 706(2)(D) Claim

Plaintiff's first claim for relief seeks to invalidate the 2020 Letter as an action taken "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), because it did not go through the notice-and-comment requirements that apply to legislative rules. "To establish an injury-in-fact, a plaintiff challenging the violation of a procedural right must demonstrate (1) that he has a procedural right that, if exercised, could have protected his concrete interests, (2) that the procedures in question are designed to protect those concrete interests, and (3) that the challenged action's threat to the plaintiff's concrete interests is reasonably probable." *Azar*, 911 F.3d at 570.

Plaintiff claims a procedural right to notice and comment procedures for any "rules which do not merely interpret existing law or announce tentative policy positions but which establish new policy positions that the agency treats as binding . . . regardless of how [the rules] initially are labeled. FAC ¶ 68 (citing 72 Fed. Reg. 3433). Plaintiff further avers that exercising the proper notice and comment procedure could have protected (1) its institutional interests in the promulgation and enforcement of sufficiently safe standards for scaffolding on federally-funded

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING MOTION TO DISMISS
CASE NO. 24-cv-04985-RS

projects subject to OSHA requirements and (2) its economic interests in not suffering the financial injury of payments to contractors who rely on the 2020 Letter in demanding higher sums to build what Plaintiff considers to be sufficiently safe scaffolding. *Id.* ¶ 75. Defendant contends, however, that Plaintiff enjoys no such procedural right with regard to the 2020 Letter because it is not the sort of legislative rule for which notice and comment is required.[2]

Unlike the interim final rules that the Ninth Circuit found to support standing in *Azar*, the 2020 Letter is an interpretive guidance not subject to notice and comment procedures. "[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)). By its own terms, the APA's notice-and-comment rulemaking procedures do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). "The absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules. But that convenience comes at a price: Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Mortg. Bankers,* 572 U.S. at 97 (quoting *Guernsey*, 514 U.S. at 99). In *Mortgage Bankers*, the court highlighted how such rules may be freely promulgated "whether or not they are consistent with earlier interpretations"— which in turn means that there is no "procedural right . . . to notice and an opportunity to comment when an agency changes its interpretation of one of the regulations it enforces." *Id.* at 102.

*Mortgage Bankers* is fatal to Plaintiff's ability to demonstrate injury as to its first claim. Even accepting as true the averment that the 2020 Letter marks a shift in interpretation from the 2013 Letter, the fact remains that it does not have the force and effect of law such that notice and comment was required. Plaintiff argues that, at the motion to dismiss stage of litigation, the court

---

[2] Plaintiff fairly points out that Defendant did not challenge the adequacy of the alleged injuries in its motion but instead only raised it on reply and at oral argument. Notwithstanding this arguable waiver, a court can (and must) assure itself of standing in order properly to assert jurisdiction. A *sua sponte* inquiry into the alleged injuries is therefore appropriate in this instance.

must credit its allegation that the 2020 Letter "is in fact an amendment, modification and/or revision to the regulation" at 29 C.F.R. 1926.451(a)(1).  *See* FAC ¶ 71; *see also id.* ¶ 73 ("[The 2020 Letter]. . . is itself a legislative rule.")  In this regard, Plaintiff overlooks the fact that a court need not accept "legal conclusions" when evaluating the plausibility of a complaint.  *Iqbal*, 556 U.S. at 678.  There is no evidence that OSHA is enforcing the underlying regulation any differently than it did before the issuance of the 2020 Letter, nor that it has taken any action with regard to Plaintiff or anyone else based on the allegedly new interpretation of the regulation.

Because the 2020 Letter does not have the force of law, Plaintiff likewise fails to demonstrate the third prong of establishing injury-in-fact in the context of a procedural claim— that is, showing the challenged action's threat to concrete interests is "reasonably probable."  *Azar*, 911 F.3d at 571.  In *Azar*, it was reasonably probable that state plaintiffs would suffer certain financial injuries from final agency actions in the form of interim final rules that provided exceptions to the Affordable Care Act's contraceptive coverage requirements.  The causal chain was simple: numerous employers were expected to use the new exceptions to deny care, which would in turn drive employees to seek alternatives via state-funded plans and thus cost the states money.  *Id.* at 571–73.  This satisfied the necessary showing "that third parties will likely react in predictable ways."  *California v. Texas*, 593 U.S. 659, 675 (2021).  Here, Plaintiff has failed to show such a likelihood.  The 2020 Letter does not have the force of law, so the first link in Plaintiff's causal chain depends on third parties having a "mistaken understanding" of the Letter's impact, which itself suggests a severely attenuated act-to-injury connection.  *See Whitewater Draw Nat. Res. Cons. Dist. V. Mayorkas*, 5 F.4th 997, 1014–15 (9th Cir. 2021).  The second link in the chain depends on those parties, such as Plaintiff's contractors, charging Plaintiff more money in order to build scaffolding that complies with Plaintiff's interpretation of the relevant regulation.  "Even were we to assume that inaccurate knowledge of [the regulations] could have provided some encouragement to those who [contracted with Plaintiff], the Supreme Court's precedent requires more than illogic or unadorned speculation before a court may draw the inference Plaintiffs seek."  *Id.* (quoting *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (cleaned up)).  Whereas the states in *Azar* would have been obligated to cover the insurance needs of qualifying

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

applicants who sought state-funded care after their employers used the relevant exceptions, *see* 911 F.3d at 572, Plaintiff here could have responded to its contractors' demands in a myriad of ways, not all of which necessarily lead to financial harms. Indeed, "the attenuation in [Plaintiff's] chain of reasoning, unsupported by well-pleaded facts, is worthy of Rube Goldberg." *Whitewater Draw*, 5 F. 4th at 1015.

Because the 2020 Letter is an interpretive letter not subject to notice-and-comment procedure, Plaintiff fails to demonstrate the presence of any procedural right that could protect its concrete interests and therefore lacks Article III standing to bring its first claim.

**B. Standing as to 5 U.S. § 706(2)(A) Claim**

Plaintiff's other claim is that the 2020 Letter is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). According to the complaint, OSHA gave no explanation for its departure from the explicit terms of the underlying regulation, nor of the factors that informed its decision. FAC ¶ 8081. Plaintiff also alleges that OSHA failed to consider the practical harms and safety necessities implicated in determining how much load a given scaffolding component must be able to bear in a way that exposes construction workers to unnecessary risks. *Id.* ¶8285.

Again, Plaintiff lacks standing to bring this claim. The APA provides for judicial review of only those actions that are either "made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Plaintiff cites no statute that makes OSHA interpretive letters reviewable, and as Defendant points out, the 2020 Letter is not a final agency action. An agency action is only final if it satisfies two conditions: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S 154, 177–78 (1997)). "[A]n agency letter to a single entity that was purely informational in nature and compelled no one to do anything . . . is not final agency action." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1259 (9th Cir. 2022)

("*AIMSI*") (internal quotation marks omitted).

The letter here is purely informational in nature and could not have injured Plaintiff because it did not compel anyone to do anything. Rather, it is literally "'the type of workaday advice letter that agencies prepare countless times per year in dealing with the regulated community.'" *Id.* at 1260 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)). Indeed, it "is little more than a restatement of statute and regulations in a response to a 'request for assistance.'" *Id.* (quoting *City of San Diego v. Whitman*, 242 F.3d 1097, 1100 (9th Cir. 2001). These characteristics demonstrate that the 2020 Letter "is not the consummation of a decisionmaking process or an order from which 'legal consequences will flow.'" *Id.* (quoting *Bennett*, 520 U.S. at 178).

The *AIMSI* opinion addressed a letter much like the one at issue here: the Drug Enforcement Administration ("DEA") responded to a question from the public. Instead of scaffolding, the question concerned the application of certain statutes governing drug research into psilocybin, a controlled substance. *Id.* at 1252. Concluding that the letter was not subject to review as a final action, the Ninth Circuit explained that "[a]n agency's informational document, in which 'an agency merely expresses its view of what the law requires of a party,' is not a final agency action." *Id.* at 1258 (quoting *Indep. Equip. Dealers Ass'n*, 372 F.3d at 427–28).

The Ninth Circuit contrasted such a document with one that "marks the conclusion of an agency's decisionmaking process and has legal consequences for the regulated party," which *would* amount to final agency action. *Id.* at 1259. As an example, the court cited "a determination issued by the Army Corps of Engineers giving its definitive view on whether a particular piece of property contained wetlands," *id.* at 1259–60 (citing *Hawkes*, 578 U.S. at 596), as well as "a series of enforcement orders stating that the National Park Service "had jurisdiction over the Golden Gate National Recreation Area (GGNRA) and announcing its intention to enforce the prohibition on commercial fishing in those waters.'" *Id.* at 1260 (citing *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 577 (9th Cir. 2019)).

Plainly, the 2020 Letter is like the DEA letter in *AIMSI*, not the jurisdictional determination in *Hawkes* nor the enforcement orders in *San Francisco Herring Association*.

Plaintiff urges the court to reach the opposite conclusion, arguing that even a so-called "clarification" of agency regulations can qualify as final. The case Plaintiff cites for that proposition, however, concerned "an order" by the Interstate Commerce Commission which explicitly stated that it was concluding a long-running and publicly conducted set of proceedings. *See Frozen Food Express v. United States*, 351 U.S. 40, 41–42 (1956). Plaintiff next contends that even informal communications count as consummated decision-making if they resolve a question of regulatory interpretation and impose practical consequences. Yet, the cited authority for this premise, *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1090–92 (9th Cir. 2016), is hardly on point. There, the Ninth Circuit recognized that an agency letter explaining a decision to apply a certain statute to the remains and objects of a Native American tribe amounted to final agency action "because it was the consummation of the [agency's] decisionmaking process regarding which statutory scheme would apply to determine the [tribe's] property interests in the remains and objects, and significant legal consequences flow from the decision." *Id.* at 1091. Here, the letter in question includes no indication that it is the culmination of OSHA's decisionmaking process on scaffolding, let alone that significant legal consequences will follow as a result. Moreover, the FAC provides no suggestion that OSHA is enforcing the relevant regulations any differently than before. It is frankly unclear if the 2020 Letter even amounts to a definitive departure from the 2013 Letter.

Plaintiff claims that the court should not rely on *AIMSI* because the letter in that case did not "impose enforceable standards" and "did not alter or create obligations beyond the existing statute." In contending that OSHA's 2020 Letter is somehow different, Plaintiff proclaims that it "does not simply restate existing law, it *alters* it." Opp. Br., Dkt. No. 28, at 22. Italics notwithstanding, this statement is incorrect. To be sure, OSHA's 2020 Letter affects those with reliance interests in the subject matter. The letter in *AIMSI* was even more acute: it responded to a particular doctor's bid for "guidance on how DEA will accommodate [a new law called the Right to Try Act] so that [the doctor] can obtain psilocybin for therapeutic use with terminally ill patients." *AIMSI*, 24 F.4th 1249 at 1254. In explaining that the agency would not adjust its regulations pursuant to the new law, the DEA's response "foreclosed [the plaintiffs'] only avenue

to access psilocybin under RTT Act laws" and arguably "put them on notice that if they attempt to obtain psilocybin under the RTT Act they are at risk of civil and criminal liability under the CSA." *Id.* at 1261.  Nevertheless, the Ninth Circuit concluded that the letter was not a final action, noting it "did no more than point to the plain language of existing law."  *Id.*  So too, here, where the 2020 Letter merely cites the language of existing regulations—and especially given that it was not even directed at Plaintiff nor its contractors.

## V. CONCLUSION

Plaintiff lacks Article III standing to bring both of its claims because it cannot demonstrate injury from the 2020 Letter, which was not a final agency action.  Defendants' motion to dismiss is therefore granted.

**IT IS SO ORDERED**.

Dated: February 3, 2025

_____
RICHARD SEEBORG
Chief United States District Judge